UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ADVANCED ALTERNATIVE MEDIA, INC.,

                             Petitioner,                         21-cv-2837 (PKC)

         -against-                                 OPINION
                                                <u>AND ORDER</u>

JESSE FRASURE,

                             Respondent.
------------------------------------------------------------x

CASTEL, U.S.D.J.

             Petitioner Advanced Alternative Media, Inc. ("AAM") seeks an order confirming an arbitration award against Respondent Jesse Frasure ("Frasure") issued on January 20, 2021 (the "Final Award").  Frasure does not oppose confirmation of the Final Award.  AAM's petition is therefore granted, and the Final Award is confirmed.

## I.   BACKGROUND

             AAM is a New York corporation that provides management services for musical artists, songwriters, producers, mixers, and engineers.  (Doc 1 ¶ 3.)  Frasure is a songwriter, record producer, and music industry executive who resides and is domiciled in Tennessee.  (<u>Id.</u> ¶ 4; <u>see also</u> <u>id.</u>, Ex. D at 1.)

             In April 2014, AAM and Frasure entered into an agreement under which AAM would serve as a personal manager to Frasure in his capacity as a producer (the "Management Agreement").  (Doc 1, Ex. A.)  Under Section 4 of the Management Agreement – the provision at the center of the parties' dispute – Frasure was required to pay AAM "Commissions" on "all Gross Monies" Frasure received in connection with certain activities described in the agreement,

either during the term of the Management Agreement ("Term") or after the Term.  (Doc 1, Ex. A ¶ 4(a).)  Specifically, Frasure owed Commissions on Gross Monies he received in connection with (1) contracts or agreements, such as for employment or licensing, that Frasure entered into, performed, or substantially negotiated during the Term ("Term Contracts"); (2) musical compositions and other "Entertainment Industry undertakings, activities and products created or services rendered in whole or in part during the Term," including those that began prior to the Term but were "exploited" during the Term; and (3) all "copyrights and publishing and other rights in any entertainment or amusement properties" that Frasure owned or acquired, in whole or in part, either during the Term or prior to the Term if "newly exploited" during the Term. (Id.)  The commission rate was fifteen percent of such Gross Monies (except with respect to studio(s) and equipment Frasure owned or controlled, for which the rate was ten percent).  (Id.)

        The same provision clarifies that AAM's "entitlement to the Commission on Gross Monies received after the Term shall continue in perpetuity following the expiration or termination of the Term."  (Id.)  It also establishes a declining commission rate for "Post Term Product," defined as works and products created by Frasure pursuant to Term Contracts after the expiration of the Term.  (Id.)  For example, Frasure owed twelve and one-half percent of Gross Monies derived from Post Term Product during the first year after the Term expired, ten percent the following year, seven and one-half percent the next year, and so on.  (Id.)

        The Management Agreement also contained the following arbitration provision:

> Upon the request of a party to this Agreement, any claim, controversy or other dispute regarding this Agreement, including any breach or interpretation of this Agreement (each an "Arbitrable Dispute"), shall be settled and resolved by binding arbitration in New York City, New York . . . . The arbitrator's decision on the Arbitrable Dispute shall be a final and binding determination and shall be fully enforceable as an arbitration award in any court having jurisdiction and venue of the parties. . . . Each party to this

> Agreement submits to the exclusive jurisdiction of the courts located in New York City, New York, for purposes of compelling arbitration or giving legal confirmation of any arbitration award. . . .

(Id., Ex. A ¶ 11.)

AAM commenced an arbitration against Frasure in 2019, claiming that he failed to pay Commissions he owed to AAM under the Management Agreement.  (Id. ¶ 1, Ex. B at 2, Ex. C.)  It asserted Frasure owed Gross Monies he earned during the Term as well as revenue he earned after the term as result of Term Contracts (or, in industry parlance, "sunsets").  (Id., Ex. B at 6).  AAM sought a total award of $1,506,281.73 – representing the claimed unpaid Commissions, prejudgment interest, post-judgment interest and attorneys' fees and costs – as well as a declaration that AAM is "entitled, in perpetuity, to payment by Frasure of the commissions set forth in Section 4 of the Agreement." (Id.)

For his part, Frasure argued that the Management Agreement was void for a variety of reasons, including lack of consideration.  (Id., Ex. D.)  He also asserted three counterclaims: (1) that AAM acted as an unlicensed "Talent Agency" under California law, (id., Ex. D at 5-6); (2) that AAM violated Tennessee Code Annotated § 47-18-1703, (id., Ex. D at 6); and (3) that AAM "failed to render any services required of it under the [Management] Agreement," (id.).  Frasure also requested an award directing AAM to refund the Commissions that he already paid to AAM, trebled (totaling $533,136).  (Id.)  The first two counterclaims were voluntarily dismissed as moot after the Honorable Shira A. Scheindlin (the "Arbitrator"), held that New York law applied to the dispute.  (Id. ¶ 12, Ex. B at 3.)  The Arbitrator granted AAM's motion to dismiss the third counterclaim.  (Id. ¶ 12, Ex. B at 3.)

Ultimately, on January 20, 2021, the Arbitrator issued a Final Award finding in favor of AAM and directing Frasure to pay AAM a total of $1,275,744.43, comprised of

$523,323.62 in damages as well as prejudgment interest, post-judgment interest, attorneys' fees and costs and a portion of the arbitration fees and expenses.  (Id., Ex. B at 50-52.)

To arrive at the damages amount, the Arbitrator analyzed in detail whether songs Frasure wrote before the Term were commissionable after the Term; whether, even after the Term expired, Frasure owed Commissions on income generated by Term Contracts; and whether there was any commissionable Post Term Product.  (Id., Ex. B at 17-18.)  The Arbitrator found and the Final Award reflects that Frasure owed AAM unpaid Commissions on certain royalties received in connection with songs written before the Term (for example, he owed Commissions on royalties earned in connection with pre-Term songs that were "exploited" during the Term pursuant to a Term Contract – but only if those royalties were received during the Term).  (Id., Ex. B at 22-23, 23 n.1.)  The Final Award also holds that Frasure must "continue to pay commission in perpetuity on revenue received" from specific Term Contracts detailed in the award and on compositions written or newly exploited during the Term pursuant to a Term Contract.  (Id., Ex. B at 23-24, 51.)  And finally, the Final Award concludes that there were "no works created entirely after the Term pursuant to a Term Contract"; therefore, Frasure does not owe Commissions on Post Term Product.  (Id., Ex. B at 51)

As for declaratory judgment, the Final Award provides: "AAM is awarded a Declaratory Judgment stating that (i) the [Management Agreement] is enforceable; and (ii) Frasure is required to pay commissions to AAM under the terms set forth in §4 of the [Management Agreement] as determined in this Award."  (Id.)

In February 2021, Frasure paid AAM the total award, amounting to $1,275,744.43.  (Id. ¶ 17.)  AAM then filed its petition seeking to confirm the Final Award on April 2, 2021, within one year after the Final Award was issued, as is required by 9 U.S.C. § 9.

## II.  DISCUSSION

Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1) because AAM is a citizen of New York and Frasure is a citizen of Tennessee, and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Venue is proper in this District pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, because the parties agreed that all actions or proceedings arising from the Management Agreement shall be litigated in courts situated in New York City, New York.  (See Doc. 1, Ex. A ¶¶ 11, 15(g)).

Under the FAA, when parties have agreed that a court may enter judgment upon an arbitration award, "any party to the arbitration may apply to the court [specified in their agreement] for an order confirming the award."  9 U.S.C. § 9.  The court "must grant such an order unless the award is vacated, modified, or corrected" pursuant to sections 10 and 11 of the FAA.  Id.; Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008).  Therefore, the "court's function in confirming or vacating an arbitration award is severely limited."  Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (quoting Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir. 1960)).  The confirmation of an arbitration award is normally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)).  An arbitrator's award is entitled to "great deference" and should be confirmed as long as there is a "barely colorable justification for the outcome reached."  Id.; Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 103 (2d Cir. 2013).

In the present case, Frasure does not oppose confirmation of the Final Award – to the contrary, he actually "favors confirmation of the actual award." (Doc 8 ¶¶ 5-6.) In fact, he views the Final Award as a "significant victory" due to the categories of income the Arbitrator determined were not commissionable. (See id. ¶ 5.)

Nevertheless, he opposes AAM's petition. He claims the petition "misstates the award" by "falsely stat[ing] that the award granted AAM a declaratory judgment enforcing §4 of the Management Agreement, when the true fact is that §4 is only enforceable to the extent **determined by the Final Award dated January 20, 2021, in AAA Arbitration Case #0-19-0003-1086.**" (Id. ¶¶ 1, 6 (bold in original).)

AAM's petition does not recite the Final Award's declaratory judgment language verbatim. The petition states, in relevant part, that the Final Award granted AAM "a Declaratory Judgment stating that (i) the Management Agreement is enforceable; and (ii) that Frasure is required to pay commissions to AAM under the terms set forth in §4 of the Management Agreement." (Doc 1 ¶ 15 (emphasis added).)

The Arbitrator took apparent care in wording the declaratory relief in her Final Award:

> . . . . AAM asks that I enter a declaratory judgment stating that "(a) the Management Agreement is fully binding and enforceable; and (b) AAM is entitled, in perpetuity, to payment by Frasure of the commissions set forth in Section 4 of the Management Agreement." I will enter a declaratory judgment as a part of this Final Award but cannot do so precisely in the language requested by AAM. I have no problem with the language of request (a) above. But I cannot order a judgment in the words of request (b) above because such a judgment would leave an open question as to the scope of the obligations under that section of the [Management Agreement]. One purpose of this arbitration is to determine the scope of Frasure's obligations under Section 4 of the [Management Agreement]. Therefore, the declaratory judgment can only say "AAM is entitled, in perpetuity, to payments by Frasure of the commissions set forth

in Section 4 of the Management Agreement, **as determined by the Final Award dated January 20, 2021, in AAA Arbitration Case #0-19-0003-1086**."

(Id., Ex. B. at 48-49 (internal citations omitted) (bold in original).)  And the Final Award later states: "AAM is awarded a Declaratory Judgment stating that (i) the MA is enforceable; and (ii) Frasure is required to pay commissions to AAM under the terms set forth in §4 of the MA as determined in this Award."  (Id., Ex. B at 51.)  In short, Frasure takes issue with AAM's omission of the phrase "as determined by the Final Award" or "as determined in this Award." Frasure aims to ensure that a grant of AAM's petition does not place him on the hook for Commissions the Arbitrator excluded in the Final Award.

It is the Final Award that AAM seeks to enforce, and that Award speaks for itself. AAM's petition is GRANTED.


III. CONCLUSION

For the foregoing reasons, AAM's petition is GRANTED.  The Clerk is directed to enter judgment for AAM.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
       October 26, 2022

7